# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5182 | **DATE** | 3/12/2002 |
| **CASE TITLE** | TIG Insurance Company vs. Joe Rizza Lincoln-Mercury, Inc. | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Cross Motions for Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10)■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the Court finds that (1) summary judgment is GRANTED in favor of Rizza [13-1] and DENIED against TIG [11-1] in that TIG had a duty to defend the underlying lawsuits because they were potentially covered under the policy provisions and (2) summary judgment is GRANTED in favor of TIG [11-1] and DENIED against Rizza [13-1] to the extent that TIG does not have a duty to indemnify Rizza for the settlements of the claims in the underlying lawsuits. Accordingly, TIG is ordered to pay the reasonable costs of defense incurred by Rizza in defending the underlying lawsuits. Rizza shall supply TIG with an itemization of defense costs within twenty-one (21) days of the date of this order. Thereafter, TIG shall have twenty-one (21) days to file written objections to any portion thereof. Any objection shall state with particularity the basis therefor. The parties are urged to meet to attempt to resolve this issue without resort to further proceedings in this Court.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | MAR 1 4 2002 | | |
| X | Docketing to mail notices. | | date docketed | | 33 |
| | Mail AO 450 form. | | CDY | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| klb (lc) | courtroom deputy's initials | | date mailed notice | | |
| | | | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TIG INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 5182 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| JOE RIZZA LINCOLN-MERCURY, INC., | ) | |
| HELEN F. BRACH, HOMER M. BRANCH, | ) | |
| LEMUEL L BRINER, ROBERTA L. | ) | |
| BRINER, CHARLES JOHNSON, WANDA | ) | |
| BARBE-JOHNSON, RENEE URRUTIA | ) | |
| AND ORA MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

TIG Insurance Company ("TIG") initiated this action for a determination of whether it had an obligation to defend and indemnify Joe Rizza Lincoln-Mercury, Inc. ("Rizza") in five state court lawsuits. Rizza subsequently settled the suits and now seeks a declaratory judgment requiring TIG to pay Rizza's defense and settlement costs. Before this court are cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") by Plaintiff / Counter-Defendant TIG and Defendant / Counter-Plaintiff Rizza. For the reasons set forth below, TIG's motion for summary judgment is denied in part and granted in part and Rizza's motion for summary judgment is denied in part and granted in part.

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Michael v. St. Joseph County, et. al, 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, see Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, see Albiero, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511.

On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. Proviso Association of Retarded Citizens v. Village of Westchester, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996); Chicago Truck Drivers, Helpers and Warehouse Workers Union (Ind.) Pension Fund v. Kelly, No. 95 C 501, 1996 U.S. Dist. LEXIS 12901, 1996 WL 507258, *3 (N.D. Ill. 1996). Thus, the traditional standards for summary judgment still apply even though both parties have moved for summary judgment. Blum v. Fisher and Fisher, Attorneys at Law, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997). The Court thus considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration. O'Regan v. Arbitration Forums, Inc., 246 F.2d 975, 983 (7th Cir. 2001); Chicago Truck Drivers, 1996 WL 507258 at *3. This "Janus-like perspective. . . sometimes forces the denial of both motions," but only where there are material facts in dispute. Buttitta v. City of Chicago, 803 F. Supp. 213, 217 (N.D. Ill. 1992), aff'd, 9 F.3d 1198 (7th Cir. 1993).

## II. Factual Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts. It should be noted that the material facts are not disputed. The plaintiff and counter-defendant TIG is a California corporation with its principal place of business in Texas. Defendant and counter-plaintiff Rizza is an Illinois corporation with its principal place of business in Naperville, Illinois. Defendants Helen F. Branch, Homer M. Branch, Lemuel L. Briner, Charles Johnson, Wanda Barbe-Johnson, Renee Urrutia and Ora Miller are each residents of Illinois are nominal parties only. This Court has diversity jurisdiction over this matter

pursuant to 28 U.S.C. § 1332(a) as this action is between citizens of different states and the amount in controversy exceeds $75,000.

Rizza is an automobile dealer. It sells new and used automobiles on a retail basis. TIG issued Policy No. FAD 031915583, effective October 1, 1995 to October 1, 1996, with Rizza as the named insured. The TIG policy includes, among other coverages, an endorsement entitled TRUTH-IN-LENDING ERRORS & OMISSIONS COVERAGE ENDORSEMENT ("TILA Endorsement"). The TILA endorsement provides, in pertinent part, as follows:

A.    WE WILL PAY.

1.    We will pay all sums the 'insured' legally must pay as damages solely be (sic) operation of Section 130, Civil Liability, of Title 1 (Truth in Lending Act) of the Consumer Credit Protection Act (Public Law 90-321.82 Stat.146 et seq.) because of error or omission in failing to comply with the section of the Act shown above.

2.    We have the right and duty to defend any suit asking for damages because of such error or omission. However, we have no duty to defend suits for errors and omissions not covered by this policy. We may investigate and settle any claim or suit we consider appropriate. Our payment of the TRUTH IN LENDING ERRORS AND OMISSIONS COVERAGE limit ends our duty to defend or settle.

B.    WE WILL NOT COVER - EXCLUSIONS
This insurance does not apply to any obligation for which the inusred (sic) may be held liable under Section 112, Criminal Liability, of Title 1 (Truth in Lending Act) of the Consumer Credit Protection Act (Public Law 90-321.82 Stat. 146 et seq.).

C.    OUR LIMIT OF LIABILITY
Regardless of the number of insureds, transactions, claims made or suits brought, the most we will pay for all damages because of all errors or omissions, covered by this policy, made in 'your' completion of all transactions during the period of the Garage Insurance (Coverage Supplement) is the amount stated in the Declarations.

In the TIG policy, the Garage Coverage Part Supplemental Declarations Schedule A-1 provides Truth in Lending Errors & Omissions Coverage in the amount of $75,000 per vehicle/$500,000 aggregate with a deductible of $1,000 per vehicle.

The TIG policy issued to Rizza also includes an endorsement entitled INSURANCE AGENTS ERRORS & OMISSIONS COVERAGE ENDORSEMENT ("Insurance Agents Endorsement").

The Insurance Agents Endorsement provides, in pertinent part:

A.    Coverage

Subject to the Limit of Insurance specified in this endorsement, we will pay all sums 'you' legally must pay as damages arising out of any negligent act, error or omission of an 'insured' in issuing any life, health, accident, disability or physical damage insurance connected with the purchase of any 'auto' from 'you'.

We have the right and duty to defend any such 'suit' against 'you' for these damages. However, we have no duty to defend any 'insured' against a 'suit' seeking damages to which this insurance does not apply. We may investigate and settle any claim or 'suit' as we consider appropriate. Our duty to defend or settle ends with the LIMIT OF INSURANCE for this coverage has been exhausted by payment of judgments or settlements.

B.    LIMIT OF INSURANCE

Our Limit of Insurance for each claim or 'suit' will be the purchase price of the vehicle specified in the contract with the insured. The Annual Aggregate Limit of Insurance will be as shown on SCHEDULE A-1 of this policy. This Limit of Insurance shall include all defense expenses.

C.    DEDUCTIBLE

The deductible for each claim under this coverage will be as specified on SCHEDULE A-1 of this policy.

Between March 3, 1999 and March 22, 2000, there were several lawsuits filed against Rizza in state court in DuPage County, Illinois. On March 3, 1999, Lemuel and Roberta Briner ("Briners") filed a complaint alleging that On March 11, 1996 they purchased a used Chevrolet Corsica automobile from Rizza for a vehicle cash price of $5,215.72. The Briners purchased this vehicle on credit pursuant to a Retail Installment Contract. The complaint alleges that they had agreed to purchase credit disability insurance for a premium of $166.67 but that they had been sold, without their authorization, credit disability insurance costing $233.45 plus credit life insurance that cost $111.28. The Briners further alleged that Rizza violated TILA by failing to disclose the actual "finance charge", "amount financed", "total of payments", "total sales price" and that Rizza had retained a portion of the credit disability insurance premium. The Briners sought a revocation of their Retail Installment Contract, $10,000 in compensatory damages and $100,000 in punitive damages. On or about March 17, 1999, Rizza tendered its defense and indemnity for the Briner lawsuit to TIG.

On June 29, 1999, TIG agreed to provide Rizza a defense, under a reservation of rights. The reservation of rights letter stated, in part: "As discussed, in detail below, the allegations of liability against you in the lawsuit do not state a cause of action potentially covered under any portion of the policy, with the possible exception of the Truth-in-Lending Endorsement." The reservation of rights letter did not address the Insurance Agents endorsement. Rizza was further advised that due to a conflict of interest, TIG would reimburse Rizza for reasonable costs and attorney's fees of defense counsel selected by Rizza. Rizza retained the law firm of Williams & Montgomery Ltd., (now Williams Montgomery & John Ltd.) as independent "conflicts' counsel for defense of the Briner lawsuit. On August 1, 2000, Rizza's defense counsel notified TIG that

the plaintiff's counsel had solicited a settlement offer and that a similar case had settled for $45,000. On August 21, 2000, TIG notified Rizza that it was withdrawing its funding of the Briner lawsuit defense and was filing a declaratory judgment complaint to obtain a judicial determination of its rights and obligations. Rizza subsequently paid $50,000 to settle the Briner lawsuit.[1]

On or about May 6, 1999, Helen and Homer Branch ("Branches") filed a lawsuit against Rizza alleging that they had purchased a used 1995 Ford Crown Victoria automobile from Rizza on credit pursuant to a Retail Installment Contract.. They alleged, inter alia, that they had been sold credit life insurance, without their authorization, for a charge of $108.03. The Branches further alleged that Rizza had violated TILA by failing to disclose that it had retained a portion of the credit life insurance premium. The Branches sought revocation of the Retail Installment Contract, $30,000 in compensatory damages and $100,000 in punitive damages. Rizza tendered its defense and indemnity for the Branch lawsuit to TIG on or about May 20, 1999. On November 11, 1999, TIG agreed to provide Rizza defense, under a reservation of rights. The reservation of rights letter stated, in part:

> As you know, each of these claims have similar allegations of violations of Truth in Lending and possible forgery regarding the purchase of credit disability insurance and seek revocation of acceptance. Although the facts differ somewhat from claim to claim the underlying claims are similar and would be subject to the same policy provision as set forth in the Briner case.

Rizza retained the law firm of Williams & Montgomery Ltd., as independent "conflicts" counsel for defense of the Branch lawsuit. As in the Briner lawsuit, Rizza's defense counsel notified TIG

---

[1]TIG disputes any implication that any portion of the settlement amount was paid to settle a claim for damages under Section 130 of the Truth in Lending Act, 15 U.S.C.A. § 1640.

that the plaintiff's counsel had solicited a settlement offer. Williams & Montgomery urged the filing of a statutory offer of judgment and requested authority to file same in the amount of $65,000. On August 22, 2000, TIG notified Rizza that it was withdrawing its funding of the Branch lawsuit defense and was filing a declaratory judgment complaint to obtain a judicial determination of its rights and obligations. Rizza subsequently paid $100,000 to settle the Branch lawsuit.[2]

On or about July 2, 1999, Ora Miller brought suit against Rizza alleging that she and her deceased husband Earl Miller purchased a used 1991 Lincoln Town car from Rizza on or about July 5, 1996 on credit pursuant to a Retail Installment Contract. In the complaint, Ora Miller alleged, inter alia, that her name was on the Retail Installment Contract but she had not signed that contract. She also alleged that her husband had not signed the Credit Disability Insurance Section of the Retail Installment Contract. She further alleged that Rizza had failed to disclose that part of the purchase price of the credit disability insurance was refunded to Rizza. Mrs. Miller alleged that Rizza's actions were "violations of a statute that have (sic) a public interest impact" and she sought, against Rizza, compensatory damages of $30,000 and punitive damages of $250,000. On or about March 1, 2000, Ora Miller filed an Amended Complaint which was similar to her original Complaint. She added the allegation that the charge for the credit disability insurance was $305.83 and that Rizza's keeping a portion of this charge, without disclosure, was a violation of the Federal Truth-In-Lending Act.

---

[2]TIG disputes that any portion of the settlement amount was paid to settle a claim for damages under Section 130 of the Truth in Lending Act, 15 U.S.C.A. § 1640.

On July, 13, 1999, Rizza tendered its defense and indemnity for the Miller lawsuit to TIG. On August 3, 1999, TIG declined to provide Rizza with a defense or indemnity for the Miller lawsuit. TIG's letter stated, in part:

> Based upon our investigation and review of the lawsuits (sic) allegation we do not find that an 'accident' took place nor did this incident result in 'bodily injury' or 'property damage.' Therefore the liability policy does not provide coverage for this loss. We do not find any allegations of violation of Truth-In-Lending Laws.

The declaration letter made no reference to the Insurance Agents Endorsement. On March 16, 2000, Rizza tendered the Miller Amended Complaint to TIG and again requested a defense. On March 29, 2000, TIG reopened its Miller claim file. Rizza retained the law firm of Williams & Montgomery as independent conflicts counsel to defend it in the Miller lawsuit. TIG has not paid any of the Miller defense fee or cost bills. On August 1, 2000, Rizza's defense counsel gave TIG the same notification as in the Briner and Miller cases. Rizza's counsel requested authority to file a statutory offer of judgment in the amount of $65,000. On August 22, 2000, TIG notified Rizza that it was filing a declaratory judgment complaint to obtain a judicial decision of its rights and obligations. Rizza subsequently paid $45,000 to settle the Miller lawsuit.[3]

On or about September 8, 1999, Renee Urrutia ("Urrutia") filed a lawsuit against Rizza alleging that she purchased a used 1988 Lincoln Continental automobile from Rizza on or about February 5, 1996 on credit pursuant to a Retail Installment Contract. She alleged, inter alia, that she was sold credit disability insurance for a premium of $370.05, without her authorization, and that in violation of the Federal Truth-In-Lending Act, Rizza failed to disclose that it retained a portion of this charge. Urrutia sought a revocation of the Retail Installment Contract, $20,000 in

---

[3]TIG disputes that any portion of the settlement amount was paid to settle a claim for damages under Section 130 of the Truth in Lending Act, 15 U.S.C.A. § 1640.

compensatory damages and $100,000 in punitive damages. On September 23, 1999, Rizza

tendered its defense and indemnity for the Urrutia lawsuit to TIG. On November 11, 1999, TIG

agreed to provide Rizza a defense, under a reservation of rights. The reservation of rights letter

stated, in part:

> As you know each of these claims have similar allegations of violation of Truth-
> In-Lending and possible forgery regarding the purchase of credit disability
> insurance and seek revocation of acceptance. Although the facts differ somewhat
> claim to claim, the underlying claims are similar and would be subject to the same
> policy provisions as set forth in the Briner case.

The reservation of rights letter did not address the Insurance Agents endorsement. Rizza, with

the consent of TIG, retained the law firm of Williams & Montgomery, as independent conflicts

counsel for the defense of the Urrutia lawsuit. Rizza's defense counsel notified TIG that the

plaintiff's counsel had solicited a settlement offer and that a similar case had settled for $45,000.

Counsel requested authority to file a statutory offer of judgment in the amount of $65,000. On

August 22, 2000, TIG notified Rizza that it was withdrawing its funding of the Urrutia lawsuit

defense and was filing a declaratory judgment complaint to obtain a judicial determination of its

rights and obligations. Rizza subsequently paid $50,000 to settle the Urrutia lawsuit.[4]

On or about March 22, 2000, Charles Johnson and Wanda Barbe-Johnson ("Johnsons")

filed suit against Rizza alleging that they purchased a new 1996 Mercury Grand Marquis

automobile from Rizza on credit pursuant to a Retail Installment Contract or about February 17,

1996. The complaint alleged, inter alia, that in violation of the Federal Truth-In-lending Act,

Rizza failed to disclose to them that it was retaining a portion of the $1751.08 charge for credit

---

[4]TIG disputes that any portion of the settlement amount was paid to settle a claim for
damages under Section 130 of the Truth in Lending Act, 15 U.S.C.A. § 1640.

life and credit disability insurance. The Johnsons sought a revocation of the Retail Installment Contract, statutory damages pursuant to TILA, $30,000 in compensatory damages and $100,000 in punitive damages. On April 28, 2000, Rizza tendered its defense and indemnity for the Johnson lawsuit to TIG. On November 11, 1999, TIG notified Rizza that:

> In the case of the Johnson matter, which is not yet in suit, TIG is not the (sic) obligated to pay for the defense of this matter since it is not in suit. TIG's handling of the Johnson case is also being handled under the same reservation of rights that applies to the other cases.
>
> As you know each of these claims have similar allegations of violations of Truth in Lending and possible forgery regarding the purchase of credit disability insurance and seek revocation of acceptance. Although the facts differ somewhat from claim to claim, the underlying claims are similar and would be subject to the same policy provisions as set forth in the Briner case.

Rizza, with the consent of TIG, retained the law firm of Williams & Montgomery as independent conflicts counsel, to defend it in the Johnson lawsuit. Rizza's defense counsel notified TIG that the plaintiff's had solicited a settlement offer and that a similar case had settled for $45,000. Counsel requested authority to file a statutory offer of judgment in the amount of $65,000. On August 22, 2000 TIG notified Rizza that it was withdrawing its funding of the Johnson lawsuit defense and was filing a declaratory judgment complaint to obtain a judicial determination of its rights and obligations. TIG never paid any of the defense fees and costs incurred in the Johnson lawsuit. Rizza subsequently paid $20,000 to settle the Johnson lawsuit.[5]

On August 23, 2000, TIG filed its declaratory judgment complaint in this Court seeking a judicial determination that it had no obligation to defend or to indemnify Rizza with respect to

---

[5]TIG disputes that any portion of the settlement amount was paid to settle a claim for damages under Section 130 of the Truth in Lending Act, 15 U.S.C.A. § 1640.

the Briner, Branch, Miller, Urrutia and Johnson lawsuits. On November 9, 2000, Rizza filed its answer, affirmative defense and counterclaim, seeking a judicial determination that TIG did have an obligation to defend and indemnify it with respect to the Briner, Branch, Miller, Urrutia and Johnson lawsuits.

### III. Analysis

The Court will analyze the cross motions for summary judgment together as the underlying facts are not in dispute and both parties move for summary judgment in their favor on the issues of (1) TIG's duty to defend Rizza in the underlying lawsuits and (2) TIG's duty to indemnify Rizza for the settlement of the underlying lawsuits.

TIG moves for summary judgment that it had no obligation to defend or indemnify Rizza in five state court lawsuits, on the grounds that the TILA Endorsement does not provide coverage for the underlying lawsuits. TIG maintains that the TILA Endorsement limits coverage to claims for damages sought under the civil damages section of the Federal Truth in Lending Act. TIG argues that the claimants did not state a claim for damages under the Truth in Lending Act and thus coverage is not provided by the TILA Endorsement. TIG further argues that summary judgment is appropriate because it had not duty to defend or indemnify Rizza pursuant to the Insurance Agent's endorsement because the claimants in the five underlying lawsuits only allege intentional misconduct by Rizza. Rizza moves for summary judgment in its favor and argues that in each of the five underlying complaints, the plaintiff specifically alleged facts regarding Rizza's violation of TILA provisions and thus TIG had a duty to defend and indemnify.

Under Illinois law, "the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate

-12-

subjects for disposition by way of summary judgment." Crum & Forster v. Resolution Trust Corp., 156 Ill. 2d 384, 620 N.E.2d 1073, 1077, 189 Ill. Dec. 756 (Ill. 1993). Any ambiguities within the policy must be construed in favor of the insured. Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1040 (7th Cir. 1992) (citing United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 578 N.E.2d 926, 930, , 161 Ill. Dec. 280 (Ill. 1991)). However, the court must not create an ambiguity where none exists; a clear and unambiguous provision must be applied as written. Economy Fire & Cas. Co. v. Bassett, 170 Ill. App. 3d 765, 525 N.E.2d 539, 542, 121 Ill. Dec. 481 (1988)).

The legal principles governing the construction of insurance policies are well settled. An insurer's duty to defend is more inclusive than its duty to indemnify. Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co., 832 F.2d 1037, 1042 (7th Cir. 1987). "In determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." Crum & Forster, 620 N.E.2d at 1079. When making this comparison, the court should not simply look to the particular legal theories pursued by the claimant, but must focus on the allegedly tortious conduct on which the lawsuit is based. Pipefitters Welfare Educ. Fund, 976 F.2d at 1039 (citing Western Cas. & Sur. Co. v. Adams County, 179 Ill. App. 3d 752, 534 N.E.2d 1066, 1068, 128 Ill. Dec. 621 (1989)). "If the complaint states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy," the insurer is obligated to provide the insured a defense. Id. (citing Wilkin Insulation Co.,, 578 N.E.2d 926, 930). An insurer is obligated to defend its insured if the allegations in a complaint give rise to the possibility of recovery under the policy; " 'there need not be a probability of recovery.' " Tews Funeral Home,

Inc., 832 F.2d at 1042 (quoting 7C J. Appleman, Insurance Law & Practice § 4683.01 at 67 (1979)).

The insurer may properly refuse to defend its insured only if it is clear from the face of the complaint that the wrongdoing alleged is not covered under the policy. Pipefitters Welfare Educ. Fund, 976 F.2d at 1040 (citing Conway v. Country Cas. Ins. Co., 92 Ill. 2d 388, 442 N.E.2d 245, 247, 65 Ill. Dec. 934 (1982)). If any one claim potentially falls within the scope of coverage, the insurer must provide a defense. Id. (citing Maryland Cas. Co. v. Peppers, 64 Ill. 2d 187, 355 N.E.2d 24, 28 (1976)). The court "must read the underlying complaint liberally and in favor of the insured." Travelers Ins. Cos. v. Penda Corp., 974 F.2d 823, 829 (7th Cir. 1992) (citing Wilkin Insulation Co., 578 N.E.2d at 930).

In Illinois, the duty of an insurer to defend is broader than its duty to pay. An insurer cannot simply decide not to defend its insured when it recognizes that a complaint potentially alleges actions not covered by a policy. Murphy v. Urso, 88 Ill. 2d 444, 451, 430 N.E.2d 1079, 58 Ill. Dec. 828 (Ill. 1981). "The insurer has not just contracted to protect the insured against liability, but has also agreed to relieve the insured of the burden of defending lawsuits seeking to establish that liability." Maneikis v. St. Paul Ins. Co., 655 F.2d 818, 823 (7th Cir. 1981). A liability insurer in Illinois may choose from three options when it is asked to defend an insured against claims that it believes might exceed the scope of coverage:

> (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend.

Id. at 821. A fourth option--an exception to this rule--permits the insured to select independent

counsel only if there exists a conflict of interest between the insured and the insurer. Thornton v.

Paul, 74 Ill. 2d 132, 152, 384 N.E.2d 335, 343, 23 Ill. Dec. 541 (Ill. 1978); Tews Funeral Home,

Inc., 832 F.2d at 1045 ("Illinois courts allow an insured to appoint independent counsel to control

the litigation where the parties' interests conflict."). It is under this exception that an insurer

cannot truly be said to be defending its insured.

In this case, TIG opted for the fourth option and then changed its mind and decided to

seek a declaratory judgment. TIG claims it has no duty to defend under the TILA endorsement

unless the claim arises out of an error or omission in failing to comply with the Truth in Lending

Act and the claimant must seek damages under the Truth in Lending Act. This Court agrees.

The language is unambiguous and plainly provides that (1) TIG will pay all sums the 'insured'

legally must pay as damages (2) solely by operation of Section 130 of TILA (codified at 15

U.S.C.A. § 1640) (3) because of error or omission in failing to comply with the section of the Act

shown above. Other courts are in agreement. See John Markel Ford, Inc. v. Auto-Owners Ins.

Co., 543 N.W.2d 173 (Neb. 1996) (TILA Endorsement limits coverage to damages awarded

under the Truth in Lending Act); Tynan's Nissan, Inc. v. American Hardware Mut Ins. Co., 917

P.2d 321, 323-324 (Colo. App. 1995) (the "clear import" of the TILA endorsement is to limit

coverage to actions under 15 U.S.C. § 1640); Heritage Mut. Ins. Co. v. Ricart Ford, Inc., 663

N.E.2d 1009, 1013 (Ohio App. 1995) (the TILA endorsement does not provide coverage for a

complaint containing allegations of violation of the Truth in Lending Act when no damages are

sought under the civil damages provision of the Act).

This Court must next determine whether any of the underlying complaints contain claims for damages under the Truth In Lending Act. In Count I of each of the underlying complaints, the claimants seek damages under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("Consumer Fraud Act"). Within Count I of each of the underlying complaints, plaintiffs allege that Rizza violated the Federal Truth In Lending Act and Consumer Fraud Act by failing to disclose that it retained a portion of the amount Plaintiffs paid for credit disability insurance. However, only the Johnson complaint seeks statutory damages pursuant to Sec. 1640 of the Federal Truth In Lending Act. Rizza contends that TIG had a duty to defend because the claims were potentially covered under the TILA endorsement. The duty to defend is only triggered if the damages sought are within the potential coverage of the policy. Gibraltar Cas. Co. v. Sargent & Lundy, 574 N.E.2d 64, 671 (Ill. App. Ct. 1991). See also Chambers Gasket & Mfg. Co. v. General Ins. Co., 29 Ill. App.3d 998 (insurer correct in refusing to defend because the damages alleged in the complaint against the insured were not covered). Here, with the exception of the Johnson complaint, the damages sought in the underlying complaints under the Consumer Fraud Act in Count I and for common law fraud in Count II are plainly not covered under the TILA Endorsement.

In arguing that the complaints are potentially covered, Rizza relies on International Ins. Co. v. Rollprint Packaging Products, Inc., 312 Ill.App.3d 998 (Ill. App. Ct. 2000), which focused on whether "facts" were alleged which potentially came within the scope of coverage. The court in that case discussed whether "facts" trigger the duty to defend under coverage provisions, like the personal injury endorsement in Rollprint, which provide coverage for certain types of conduct. This type of analysis, however, is irrelevant because the TILA Endorsement is not

-16-

triggered by specified conduct or "facts." Instead, the narrow coverage provided by the Endorsement is triggered only by a damage claim under the Truth In Lending Act. If, and only if, the claimant seeks damage under the Act is there potential coverage. Only by rewriting the endorsement could there be potential coverage, as Rizza contends, for a claim for damages under the Illinois Consumer Fraud Act. Thus, this Court finds that TIG did not have a duty to defend the Briner, Branch, Miller and Urrutia lawsuits under the TILA Endorsement. It did, however, have a duty to defend the Johnson lawsuit under the TILA Endorsement.

TIG next asserts that there can be no coverage, or potential coverage, for the five underlying lawsuits under the Insurance Agents Errors & Omissions Endorsement because each lawsuit alleges intentional misconduct and the endorsement only covers negligence. Rizza contends that in the phrase "negligent act, error or omission," it is reasonable to read the word "negligent" as modifying only "act," and not "error" and "omission." Insurance policies which provide coverage for negligent acts, errors or omissions are very common. Courts applying Illinois law have assumed, without deciding, that "negligent" modifies act, error, and omission and thus excluded coverage for intentional conduct. See United Fire and Cas. Co. v. Jim Maloof Realty, 435 N.E.2d 496, 498 (Ill. App. 1982) (denying coverage for intentional misrepresentation); Rubloff, Inc. v. American National Fire Ins. Co., 1997 WL 264327, *4-5 (N.D. Ill. 1997) (denying coverage for breach of contract based on knowingly wrongful conduct); International Ins. Co. v. Allied Van Lines, Inc., 688 N.E.2d 680, 684 (Ill. App.1997) (denying coverage for intentional termination of employee benefits). It would be illogical for an endorsement to limit coverage to negligent acts, but to provide coverage for intentional omissions or errors. As observed by the court in Golf Course Superintendents Assoc. v.

Underwriters at Lloyd's, 761 F.Supp. 1485, 1490 (D. Kan. 1991), "[i]t would be self-defeating to limit ... 'wrongful act' to negligent acts, but at the same time to cover intentional errors or omissions."

A violation of the Consumer Fraud Act may be based on an innocent or negligent misrepresentation as well as one that is intentional. Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co., 197 Ill. App. 3d 948, 145 Ill. Dec. 476, 557 N.E.2d 246 (Ill. App. 1990). For a statement of a person to constitute the intentional tort of misrepresentation, it must be: (1) of a material nature; (2) untrue; (3) known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity; (4) relied upon by the victim to his detriment; (5) made for the purpose of inducing the reliance; and (6) such that the victim's reliance led to his injury. Cullen Distributing, Inc. v. Petty, 164 Ill. App. 3d 313, 320, 517 N.E.2d 733, 738, 115 Ill. Dec. 322 (Ill. App. 1987), quoting Oltmer v. Zamora, 94 Ill. App. 3d 651, 653, 418 N.E.2d 506, 508, 49 Ill. Dec. 652 (Ill. App. 1981). The underlying complaints allege that the misrepresentations were made with "reckless disregard of the truth or falsity" not "culpable ignorance of its truth or falsity" as required for intentional misrepresentation. Thus, the underlying complaints do not allege intentional misrepresentation, which is clearly excluded from the policy coverage. However, the tort of negligent misrepresentation has essentially the same elements as intentional misrepresentation, except that the defendant's mental state is different. The defendant need not know that the statement is false. His own carelessness or negligence in ascertaining its truth will suffice for a cause of action. See Board of Education of City of Chicago v. A, C and S, Inc., 131 Ill. 2d 428; 546 N.E.2d 580; 137 Ill. Dec. 635 (Ill. 1989). By alleging that Rizza recklessly disregarded the

-18-

truth, the plaintiffs in the underlying lawsuits arguably alleged negligent misrepresentation. Thus, the claims were potentially covered under the negligent act, error, or omission language and TIG had a duty to defend the underlying lawsuits.

The question then becomes whether TIG must indemnify Rizza for the settlements in the underlying lawsuits. The duty to indemnify is much narrower than the duty to defend. Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d 552, 559, 248 Ill. Dec. 342, 734 N.E.2d 50 (Ill. App. 2000). Unlike the duty to defend, the duty to indemnify cannot be determined simply on the basis of whether the factual allegations of the underlying complaint potentially state a claim against the insurer. Waste Management, Inc. v. International Surplus Lines Insurance Co., 144 Ill. 2d 178, 203, 161 Ill. Dec. 774, 579 N.E.2d 322 (Ill. 1991) (supplemental opinion on denial of rehearing). The duty to indemnify arises only when the facts alleged actually fall within the coverage of the policy at issue. Crum & Forster, 156 Ill. 2d 384, 398. "If an insured settles an underlying claim prior to verdict, it must show that it settled an otherwise covered loss in 'reasonable anticipation of personal liability.'" United Stated Gypsum Co. v. Admiral Insurance Co., 268 Ill. App. 3d 598, 625, 643 N.E.2d 1226, 205 Ill. Dec. 619 (Ill. App. 1994), quoting Westamerica Mortgage Co. v. Tri-County Reports, Inc., 670 F. Supp. 819 (N.D. Ill. 1987).

TIG has no duty to indemnify Rizza for its settlements of the underlying lawsuits because Rizza can not show that the settlements were paid for any claim actually, not just potentially, within the coverage provided by the TIG policy. Rizza argues, in its motion for summary judgment, that "the TILA violation claims and the credit insurance sale claims are all potentially covered claims under the TIG endorsements at issue. TIG has a duty to indemnify now that

Rizza has become legally obligated to pay, through settlements, damages arising out of those claims." Rizza further argues that TIG must indemnify it because TIG is estopped from denying coverage because its refusal to provide a defense was unjustified. Finally, Rizza contends that under Commonwealth Edison Co. v. National Union Fire Ins. Co., Nos. 1-99-3524 and 1-99-3800 (Ill App., 1st Dist., June 20, 2001), it need not show that the settlement sums were for claims actually rather than potentially covered because TIG withdrew its defense and refused to participate in settlement negotiations.

Rizza's estoppel argument is without merit. Even though this Court decided that TIG had a duty to defend the lawsuits, Illinois law does not support application of estoppel under these facts. To avoid estoppel, an insurer must file the declaratory judgment action before trial or settlement of the underlying action. Unigard Ins. Co. v. Whitso, Inc., 195 Ill.App.3d 740, 553 N.E.2d 59, 61 (Ill. App. 1990). The insurer need not actually secure the declaratory judgment, but must have filed it. Ins. Co. of Ill. v. Markogiannakis, 188 Ill. App.3d 643, 544 N.E.2d 1082, 1087 (Ill. App. 1989). TIG did so. Rizza apparently settled the underlying lawsuits more than six months after this action was filed. TIG has conducted itself within the requirements of Illinois law. TIG promptly reserved its rights and filed a declaratory judgment action immediately upon denying coverage. This Court can not find that TIG acted in bad faith.

Rizza's argument regarding the Commonwealth Edison case is similarly without merit. The court there required Edison to show that it settled an otherwise covered loss in reasonable anticipation of liability. TIG does not dispute that Rizza settled the claims in reasonable anticipation of liability. Rizza has not attempted to show nor does it show that it settled the underlying lawsuits in reasonable anticipation of a claim covered under the TIG policy. As Rizza

-20-

has failed to make such a showing, TIG has no duty to indemnify Rizza for the settlement amounts in the underlying lawsuits.

## Conclusion

For the foregoing reasons, the Court finds that (1) summary judgment is GRANTED in favor of Rizza and DENIED against TIG in that TIG had a duty to defend the underlying lawsuits because they were potentially covered under the policy provisions and (2) summary judgment is GRANTED in favor of TIG and DENIED against Rizza to the extent that TIG does not have a duty to indemnify Rizza for the settlements of the claims in the underlying lawsuits. Accordingly, TIG is ordered to pay the reasonable costs of defense incurred by Rizza in defending the underlying lawsuits. Rizza shall supply TIG with an itemization of defense costs within twenty-one (21) days of the date of this order. Thereafter, TIG shall have twenty-one (21) days to file written objections to any portion thereof. Any objection shall state with particularity the basis therefor. The parties are urged to meet to attempt to resolve this issue without resort to further proceedings in this Court.

Enter:

David H. Coar
United States District Judge

Dated:
3/12/2002